REQUESTED BY: Ralph Michener, Director Department of Public Institutions.
1. Who is responsible for the cost of the care provided to a person detained in a state hospital under emergency protective custody pursuant to Neb.Rev.Stat. § 83-1020
(Supp. 1980)?
2. If the counties are liable, is it the county which commits the person or the county of his legal settlement?
3. Would the county which commits the person have legal recourse against the county of legal settlement?
4. Would the counties have recourse against the patient and his relatives?
5. Is it necessary for the Department of Public Institutions to contract with the counties to hold patients under emergency protective custody under Neb.Rev.Stat. § 83-1020
(Supp. 1980)?
6. Can the amounts billed to the counties which remain unpaid be certified to the Director of Administrative Services pursuant to Neb.Rev.Stat. § 83-380 (Reissue 1976)?
1. The person held in custody and his relatives according to their ability to pay, with the state and the county of legal settlement picking up varying amounts of the unpaid portion of full costs.
2. The county of legal settlement.
3. Yes.
4. Only through the office of the Attorney General.
5. No.
6. Yes.
(1) Neb.Rev.Stat. § 83-1020 (Supp. 1980) provides that any peace officer may immediately take into custody any individual believed to be a mentally ill dangerous person if certain harm is likely to occur before mental health board proceedings can be commenced. The person taken into custody is to be placed in a private or government hospital or a mental health center, or in a jail. The statute is silent on the issue of liability for the costs incurred for placement in a state hospital. The legislative history of the statute discloses only that financial liability was not discussed. That issue has never been decided in a reported Nebraska opinion.
Neb.Rev.Stat. §§ 83-363 through 83-380 (Reissue 1976) generally govern liability for the cost of care received at a state hospital. Neb.Rev.Stat. § 83-364 provides, in part:
 When any person is admitted to a state institution, or receives treatment prescribed by an institution following release or without being admitted as a resident patient, the patient and his relatives shall be liable for the cost of the care, support, maintenance, and treatment of such person to the extent and in the manner provided by this act.
(Relatives are defined in Neb.Rev.Stat. § 83-363 (Reissue 1976) as the person's spouse, or, if the person has no spouse and is a minor, then his natural or adoptive parents.) Legislative intent is the cardinal rule in the construction of statutes. King v. School Dist. of Omaha,197 Neb. 303, 248 N.W.2d 752 (1976). Neb.Rev.Stat. 83-364
clearly intends that liability be incurred upon an admission to or treatment at a state hospital.
A person held in a state hospital under emergency protective custody is legally deemed to be admitted to that institution. Neb.Rev.Stat. § 83-1021 (Supp. 1980) refers to the emergency protective custody process and states, `At the time of admission, the peace officer taking the individual into custody shall execute a written certificate. . .' (Emphasis supplied.) Neb.Rev.Stat. § 83-1022 (Reissue 1976) also refers to emergency custody and states, `A true copy of the certificate upon which the subject is admitted shall be made a part of the subject's records.' (Emphasis supplied.) Neb.Rev.Stat. § 83-1023 (Supp. 1980) states that, `The sheriff or director of the mental health center or hospital shall have each subject admitted by certificate under sections 83-1020 and 83-1021 evaluated by a mental health professional. . .' (Emphasis added.)
As a rule, `It is presumed that the Legislature has full knowledge and information of the subject matter of the statute, as well as relevant facts relating to prior law and existing pertinent legislation, and has acted with respect thereto.' Sanitary and Improvement Dist. #222 v. MetropolitanLife Insur. Co., 201 Neb. 10, 266 N.W.2d 73 (1978). Thus, when the Legislature chose to use the term `admitted' in reference to one held under emergency protective custody, it had full knowledge that one deemed admitted to a state hospital is liable for costs. The Legislature intended that one held under emergency protective custody incur liability for costs.
It has been argued that such an intent is constitutionally impermissible. The argument is that a person can be held under emergency protective custody, but determined not to be legally committable at a subsequent mental health board hearing. To hold a person financially liable in those circumstances, it is argued, would violate substantive due process. That argument overlooks the fact that a mental health board proceeding may be held as late as seven days after emergency custody. Neb.Rev.Stat. § 83-1027 (Supp. 1981). And, all that is determined at that hearing is whether the person is presently committable. Neb.Rev.Stat. 83-1035
(Supp. 1981). That hearing does not in anyway address the need for the intervening custody. It is easy to imagine a situation where a person would be in need of protective custody, would receive seven days of treatment, and would then not be legally committable. Thus, all that can be derived from the mental health board release is that the person has never been given a hearing on the issue of whether emergency protective custody was needed.
It has been contended that this lack of a hearing on that issue violates procedural due process. We believe that the necessary due process is provided in the legal action to collect the costs of treatment. In County of Kearney v.County of Buffalo, 167 Neb. 117, 91 N.W.2d 304 (1958), the court was faced with the contention that a statute which allowed one county to commit a person having legal settlement in a second county, without providing notice to such second county, and thereafter hold that county liable for costs, violated due process. The court disagreed with that contention and held that all issues necessary for a constitutionally permissible determination could be decided in the suit before it. Likewise, we believe that the general financial liability statutes allow litigation of the issue of the need for custody when the mental health board has not previously determined that issue. Such an interpretation disposes of the constitutional questions.
We conclude that a person held in a state hospital under emergency protective custody pursuant to Neb.Rev.Stat. 83-1020
(Supp. 1980), is admitted to that institution and is therefore primarily liable for the cost of the care provided to him. That liability is according to his ability to pay. Neb.Rev.Stat. § 83-366 (Reissue 1976). If he cannot pay full costs then his relatives, as defined in Neb.Rev.Stat. 83-363
(Reissue 1976), are responsible according to their ability to pay. Neb.Rev.Stat. § 83-369 (Reissue 1976). If the full costs remain unpaid after collection from the person and his legal relatives, then the state and the county are liable under the provisions of Neb.Rev.Stat. § 83-376
(Reissue 1976), which states:
 (1) the county in which the patient resides shall pay (a) the first fifteen dollars per day of the unpaid cost for each of the first thirty days at the Hastings Regional Center, the Lincoln Regional Center, the Norfolk Regional Center, or the Nebraska Psychiatric Institute, (b) the first ten dollars per day of the unpaid cost for each of the first thirty days at the Beatrice State Developmental Center, and (c) the first three dollars per day of the unpaid costs for each day after the first thirty days at any such institution, (2) the balance of the unpaid cost shall be borne by the state.
(2) The above-quoted section, Neb.Rev.Stat. § 83-376, makes it readily apparent that it is only the county in which the patient resides which is under financial liability. The county in which the person resides is the county of his legal settlement. County of Kearney v. County ofBuffalo, supra.
(3) The county which commits a person has legal recourse against the county of legal settlement. Neb.Rev.Stat. § 83-351 (Reissue 1976) provides:
 Expenses incurred by one county, on account of a mentally ill dangerous person whose legal settlement is in another county of the state, shall be refunded, with lawful interest thereon, by the county in which the patient has his legal settlement; such expenses shall be presented to the county board of the county sought to be charged, which shall allow and pay them the same as other claims.
(4) Neb.Rev.Stat. § 83-375 (Reissue 1976) states:
 When any patient or relative fails to pay the amounts determined to be due under this act, the State of Nebraska may proceed against such person in the manner authorized by law for the recovery of money owed to a creditor. The Attorney General shall represent the state in such actions, but may authorize the county attorney for the county in which such person resides or owns property to investigate and prosecute the action on behalf of the state.
We conclude that the county of legal settlement has a cause of action against the patient or his relatives. But, that action must be prosecuted by the Attorney General unless he authorizes the counties to prosecute on behalf of the state.
(5) The liability of the counties for the care, support, maintenance and treatment provided to persons held in emergency protective custody at state hospitals is statutory in nature. It is therefore not necessary for the Department of Public Institutions to formally contract with the counties in order to recover for such costs.
(6) Neb.Rev.Stat. § 83-380 (Reissue 1976) specifically authorizes the Director of the Department of Public Institutions to certify to the Director of Administrative Services all amounts not paid from the counties having patients chargeable thereto. Those amounts are then withheld by the State Treasurer from the next allocation due the county under Neb.Rev.Stat. § 77-27,137 (Supp. 1980).
Very truly yours, PAUL L. DOUGLAS Attorney General Martel J. Bundy Assistant Attorney General APPROVED:Paul L. Douglas
Attorney General